UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


Rico Isaih Hairston, et al.,                                   Case No. 3:19-cv-37

    Plaintiffs

  v.
                                                                       MEMORANDUM OPINION
                                                                       AND ORDER

Sean Bowerman, et al.,

    Defendants


### INTRODUCTION

*Pro se* Plaintiffs Rico Isaih Hairston and Johnnie McCall, both inmates of the Toledo Correctional Institution ("TCI") in Toledo, Ohio, have filed in this Court a civil rights action under 42 U.S.C. § 1983 against TCI Warden Sean Bowerman and TCI employees Wilson, Barker, Wyrek, Bennett, Gyescy, and Ellis. In the Complaint, Plaintiffs allege that TCI inmates, many of whom are gang members, have repeatedly threatened them with grave harm, yet prison officials have denied their repeated requests to be placed in protective custody. (Doc. 1.) Both Plaintiffs also have submitted declarations in support of the Complaint. (Doc. No. 1-6 and 1-7). Plaintiffs seek preliminary and permanent injunctive relief ordering Defendants to "cease their physical violen[t] threats toward [them], and evil intent"; a temporary restraining order directing Defendant Bowerman to transfer them to the Ohio State Penitentiary; and money damages. (*Id.* at 14.) Now before the Court are Plaintiffs' requests for a preliminary injunction and temporary restraining order.

For the following reasons, the Court denies a preliminary injunction, but grants a temporary restraining order directing Defendant Bowerman to immediately place Plaintiffs in protective custody.

## BACKGROUND

Plaintiff Hairston claims his troubles began while he was incarcerated at the Correctional Reception Center in Orient, Ohio ("CRC"). He alleges inmates there targeted him because of the nature of his offense (the rape of his stepdaughter) and sent "S.O.S.," or "stab on sight," letters to gang members at every Ohio prison. (Doc. 1 at 4-5.) Hairston informed CRC officials, who investigated the matter and placed Hairston in protective custody on August 24, 2018. (*Id.* at 4.)

Six days later, on August 30, 2018, Hairston was transferred to TCI, but he was not placed in protective custody. (*Id.*) He claims he notified prison staff of his protective custody at CRC, but they placed him in a restrictive housing transitional placement unit ("TPU") rather than protective custody. (*Id.*) On November 9, 2018, Hairston alleges he received a note stating, "10 felons are about to get your door popped and stab you up. They are about to come take your TV and kill you in that cell because of your case." (*Id.* at 5.) He immediately reported this to a corrections officer, who later told Hairston that his supervisor would not intervene. (*Id.*)

That night, Hairston had chest pains caused by his fear of getting attacked. He received medical treatment and a "protective custody investigation" was initiated. (*Id.* at 5-6.) Hairston informed the sergeant who conducted the investigation about the "S.O.S." threat and the note and identified the inmate who informed him of the threat, but his request for protective custody was denied. (*Id.* at 6-7.) He claims Defendant Gyescy, a case manager, told him that "unless you get stabbed or hurt really bad, your protective custody will be denied." (*Id.* at 7.) Hairston then began

2

to "send threats" and "inappropriate communications" to staff, presumably so that he would be sent to the TPU, where he would be safer. (*Id.* at 7-8.)

Plaintiff McCall, who resides in the cell next to Hairston's, alleges he, too, is being threatened by "multiple gang members." (*Id.* at 8.) On November 16, 2018, McCall claims a "known gang member" assaulted him in his cell. (*Id.* at 8-9.) He reported the assault to Defendant Wilson, a corrections officer, but Wilson refused to get him medical attention or inform his supervisor. (*Id.* at 9.) McCall alleges that because he reported the attack to Wilson, the next day, gang members placed a "$500 hit on his life" and "multiple inmates" threatened to "stab and jump" him. (*Id.*)

On November 18, 2018, McCall reported the situation to corrections officers, who offered to remove him from TCI if he would identify inmates who possessed drugs. (*Id.*) McCall claims he did what they asked, but his cooperation was not reported to an investigator. (*Id.*) He then informed a corrections officer that he feared for his life and was placed in TPU that day. (*Id.*) Defendant Barker, a corrections officer, then told "every inmate" why McCall was in TPU, further endangering him. (*Id.* at 10.) McCall alleges inmates later spit on him and "sprayed" him with feces and urine. (*Id.*)

Several days later, McCall's request for protective custody was assessed; it was eventually denied. (*Id.*) McCall claims Defendant Wyrek, a case manager, told him it was denied because it "deal[t] with gang members." (*Id.*) Since then, McCall has "made several threats to staff members" and assaulted an inmate so that he would be sent to a higher security prison, where he would be safer. (*Id.* at 10-11.)

Plaintiffs claim Defendants violated their Eighth and Fourteenth Amendment rights by showing deliberate indifference to their health and safety. (*Id.* at 11-13.) Along with money

3

damages, Plaintiffs request preliminary and permanent injunctive relief ordering Defendants to "cease their physical violen[t] threats toward [them], and evil intent"; and a temporary restraining order directing Defendant Bowerman to transfer them to the Ohio State Penitentiary. (*Id.* at 14.)

**STANDARD GOVERNING PRELIMINARY INJUNCTION/TEMPORARY RESTRAINING ORDER**

The purpose of both a preliminary injunction and a temporary restraining order is to preserve the status quo until a trial on the merits or some other reasoned resolution of the dispute takes place. *See, e.g.*, *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996). Given this limited purpose, they are customarily granted based on procedures less formal and evidence less complete than one would find in the record of a trial on the merits. *Camenisch*, 451 U.S. at 395.

The same standard generally applies to the issuance of preliminary injunctions and temporary restraining orders. *Northeast Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). To grant either form of injunctive relief, a court must consider: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent a stay; (3) whether granting the stay would cause substantial harm to others; and (4) whether the public interest would be served by granting the stay." *Id.* These "are factors to be balanced, not prerequisites that must be met." *In re De Lorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). When considering whether to issue a temporary restraining order, an emphasis is placed on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo. *See Motor Vehicle Board of California v. Orrin W. Fox,* 434 U.S. 1345, 1347 n. 2 (1977); *see also* Fed. R. Civ. P. 65(b)(2) (temporary restraining orders must "describe the injury and state why it is irreparable," but no other factor).

4

Temporary restraining orders may be issued without notice to the adverse parties under certain circumstances. Federal Civil Rule 65(b)(1) provides:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). "Reasonable notice" consists of information received within a reasonable time to permit an opportunity to be heard. *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974) (noting that *ex parte* "temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard").

## DISCUSSION

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). And prison officials must "take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). To establish a substantial likelihood of success on their Eighth Amendment claims against Defendants, therefore, Plaintiffs must present evidence showing that Defendants are deliberately indifferent to a known risk of harm to them. *Farmer*, 511 U.S. at 825; *see also Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997).

A prison official may be held liable for his or her failure to protect inmates from attacks by other inmates only if he knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. But

5

the prison official must exhibit more than a lack of due care for a prisoner's safety to rise to the level of an Eighth Amendment violation. *Id.* at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. It is not enough that the official "should" have perceived a significant risk but did not. *Id.*

Plaintiffs' request for a preliminary injunction is denied. *Pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers" and must be construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, claims asserted in *pro se* complaints still must have an arguable basis in law or fact to warrant relief. *See, e.g., Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Plaintiffs' request for a preliminary injunction ordering Defendants to "cease their physical violen[t] threats toward Plaintiffs, and evil intent" is overly vague and is not premised on a recognized legal theory or clear factual basis; it is denied.

I find, however, that Plaintiffs are entitled to a temporary restraining order. They have alleged facts indicating a substantial likelihood of success on the merits of their constitutional claims and demonstrating that they may indeed suffer irreparable harm without injunctive relief. Plaintiffs have provided specific allegations of fellow inmates' repeated threats to their safety, including when they received the threats, the reasons for the threats, the serious and violent nature of the threats, and possible witnesses to the threats. Plaintiffs further have presented detailed allegations showing they reported the threats to prison officials, and those officials were aware of the threats and understood the risk of serious harm they conveyed, but nevertheless failed to take steps to protect them. The fact that Plaintiff Hairston was first threatened in August 2018 and McCall was first threatened in November 2018 reduces to some extent the likelihood that the threatened assaults will occur. But my overriding concern is the substantial, irreparable harm Plaintiffs may suffer if these

6

violent threats are carried out.  Plaintiffs should immediately be placed in protective custody until their claims can be more fully addressed.

In addition, Plaintiffs' allegations establish that irreparable harm may result "before the adverse party or that party's attorney can be heard in opposition."  Fed. R. Civ. P. 65(b)(1).  Again, the serious and violent nature of the threats of harm to Plaintiffs necessitates immediate action. Although Plaintiffs' request to be transferred to the Ohio State Penitentiary may be outside the scope of my authority, I direct Warden Bowerman to immediately place Plaintiffs in protective custody.  Pursuant to Rule 65, this Order shall expire fourteen days from the date of this Order, unless extended for good cause or by consent.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge
